That will be in Case No. 23-703, Nwosuocha v. Glover Mr. Keenan, whenever you're ready Good morning, Your Honors, and may it please the Court. Gregory Keenan, appearing on behalf of Appellant Nwosuocha. I'd like to reserve two minutes, if I may. Thank you. Below the District Court dismissed Mr. Nwosuocha's copyright claims at the full B6 posture on two grounds. That was error. First, there are differences between the songs, and doctrinally that matters. As to damages, observable differences might reduce damages in a copyright case, but those differences don't mean that Mr. Nwosuocha gets absolutely nothing for what was taken from his song. In fact, long ago, Learned Hand famously said that a plagiarist cannot be excused for what he has taken by pointing to what he hasn't taken. And as its name suggests, the Substantial Similarity Test focuses on similarities and not differences. And here there are many similarities, including the unique identical flow between the two songs, a unique identical flow that members of the public immediately recognized upon hearing Defendant's song, saying that was the same flow that they recognized from Plaintiff's song. That flow is one of the key core and expressive creative artistic features of hip-hop music. How many variants are there of that flow? Of course, on the record, we don't know at this posture, but there are many, numerous amounts. So certainly enough to exceed the limits from this Court's cases like Frigos, where you're choosing between permutation of nine selections, or the types of quilts in Boisson, where you're choosing between permutations of four and five. I mean, this type of flow, even this broad category of flow, didn't exist until recently. So hip-hop is being made for decades without ever using this flow. And this is an identical flow. It's a flow that people didn't... Is it wrong to think about it in terms of meter in poetry? Yes, but it's a slightly more complicated phenomenon. So the key distinguishing feature of flow is, like poetry, there's a meter, there is syllable emphasis, but it's also interacting with the background music to create composite patterns. So you're lining up your syllables and the delivery and the cadence and the meter, like the lyrics from a Robert Frost poem, say, but then you're also making specific choices about how to make that interact with the background music, the rhythms, the beats, things of that nature. Isn't that just the whole thing? I mean, you're including the music and the lyrics. Is that what I just heard, as well as the meter and the rhythm? Could you clarify the question? I'm sorry, is that the whole thing? We're trying to get a handle on how you define flow. Sure. And what I heard you describe is sort of all of the music and not anything specific. What are the features that are unique? Sure. So the features that are unique about the song is that it shares the exact same syllable emphases, the same phenomes at the same point, identical timing, it has the same tempo. Flow is this kind of emergent composite phenomenon. And copyright case law... Going back to Judge Jacobs' question, meter in poetry is like that. You can take two poems that have the same meter and there is much of what you just described would sound the same. And that's not copyrightable. But of course, you would start to have copyrightable expression emerge where you're not just having the same meter, but then you're choosing similar words placed at the same parts of the poem. You would also have the same syllable emphases, alliteration. The more similarities that emerge, the more copyrightable it's use of the building blocks. And I would just say that flow and all the similarities observed not just by the audiences, but by the expert in the complaint, readily satisfied the feist and Boisson type of building blocks that you're taking that aren't copyrightable and then you're putting them together in ways that are copyrightable. Can I ask you about the registration here? It was for the sound recording. But I guess I don't know what the deficiency here was because we don't have the application. Can you shed some light on that? Sure. The district court said that the deficiency was that when registering the work, when submitting a copy of the song, Mr. Nisoka had only checked a box indicating a label of SR or sound recording and had failed to also check a box indicating that he wanted a musical work. We don't think that matters for three distinct reasons. And the first is just a pure textual reason, section 408C, which says that the administrative classification of work has no significance with respect to the subject matter of copyright or the exclusive rights provided by this title. It's important to bear in mind, and it's often overlooked, that for copyright, protection attaches immediately upon creation. So you don't have to go register the work to get your protection and property rights. You have to register the work to go sue. So are you asking us to hold then that any time someone checks the sound recording box, that that brings with it the copyright protection for the composition, the words, and the music? I'm asking for this court to do two things. One is to recognize that because the distinction between a sound recording and a musical work is subject matter under section 102A, that section 408's clear command that the administrative classification doesn't affect, has no significance on that would make it immaterial. And also this court has actually already held that under the predecessor statute. It's a case we cite in our brief, Batlin and Son, Inc., v. Snyder, 536F.2D486, where the court said just because it was classified on the application as one work or in one form of subject matter didn't limit the copyright protection. And that's because just like section 408, section 5 of the 1909 predecessor statute also indicated that there was no significance to the registration. So courts have dealt with this issue primarily under the 1909 Act, but they've never struggled to say if you come and you have a registration, that will satisfy the condition. Surely there's some significance to seeking a claim to your sound recording only, because others who may wish to make a sound recording of it would then not be on notice as to who has the compositional rights. They wouldn't know who to ask. And indeed, if there's no registration, they may assume that it's in the public domain. Of course, but three points, Your Honor, to that. One, copyright is a strict liability tort that doesn't turn on notice. Two, his sound recording was registered and defendants never reached out to, there's nothing in the record to indicate they reached out to anyone or did any search to try and get a license or permission. And finally, I just want to stress the Supreme Court's rationale in unit colors, where they said, of course, an applicant for a copyright registration, especially one who's not a lawyer, might check the wrong box on the registration documents as a result of some legal oversight, and we're not going to expose them to invalidation based on an applicant's good faith misunderstandings of the details of copyright. Copyright registration has never operated on a bar against unsophisticated artists. The whole point is to get the work registered so that the Copyright Office can do a first pass. But both sections... What if the client hadn't checked any box, just filled out a form, wasn't sure which box to check, so they didn't check any, still okay? Well, at that point, Your Honor, the Copyright Office would either issue the registration or they would tell him that it was deficient. But the moment that the Copyright Office rejects him, he can still, by statute, then go to court. So all that's required... You can also amend, too, right? Have you done that? There is an amendment process. And did your client pursue that? No, but we would just say that Section 411B says that the registration requirement is satisfied unless two specific conditions are met, that it was a knowing inaccuracy and a material inaccuracy. Well, I guess before you come to court asking us to say that the boxes don't matter, if you have an opportunity to go and fix it and check the right box, that seems like an easier avenue. I would say that Congress clearly commands in Section 408 and no court under the predecessor statute struggled to just apply the law that Congress indicated. So that might be an advisable approach, but it's just not one that should invalidate the copyright claims or bar him from coming to court under both the statute and precedent. Thank you. You're reserved a couple of minutes. Thank you very much. Good morning, Your Honors. May it please the Court, this is Jonathan Davis. I speak on behalf of all defendant appellees. The issues on this appeal are neither complex nor unresolved. And to your point, each of the questions that you've asked today go precisely to the issues at bay here. There is no registration. And listening to my colleague, what he is arguing are performance elements. Performance elements are not copyrightable. The triplet flow that he refers to is something that is a building block of music. It wasn't recently created. It's something that's been used since the early 90s in trap music. And it is understood in the case law that triplet flow, like meter, like harmonic regressions, things of that sort, are not copyrightable. You can have a triplet flow, but it should be copyrightable that the music inflects it, emphasizes it, plays with it in some way that is highly easily recognizable to people who listen to this kind of music. Well, I would submit to you, Your Honor, that these two triplet flows do not sound alike. And that the court below, using the lay listener test, recognized that saying a jury properly instructed would not find these works to be substantially similar. But more importantly, the construction of the triplet flow are different. The notes are different. The emphasis is different. And for that reason, it's not a sufficient basis for copyright protection. And that's what the case law has held. If there are only so many notes, only so many ways that we can put and string music together. And for that reason, it has to be something different, something novel, something unique. And we recognize that chords and phrases and words such as America, which appears in both songs, cannot be protected. If we did so, and taking their argument with respect to selection or arrangement, which was never even alleged in the complaint, but was only referred to in the briefing, it has to be of a certain numerosity. You have to have more than four or five elements at least, not the one or two that they're claiming. And they don't even have one or two, because each of the ones that they claim are part of their triplet flow, are recognized as not copyrightable. And they also don't have the, with respect to selection and arrangement, they're not identical. They are not even close. And... Can I switch over to the registration issue? Sure. So your friend describes the error in Form SR as a checkbox, a missed checkbox. Is that accurate? Your Honor, what they did here was simply register the sound recording. In music, there are two registrations that are necessary. My question is, is he right in characterizing there being a sound recording box and a music and words box? Yes, Your Honor. Okay. So if that's the issue, then wouldn't we be putting form over substance by kind of focusing on this technicality when, as your friend says, you know, Congress went to create the substantive right, and this is sort of a form that's trying to embody that? The Copyright Office has set out requirements with respect to the proper registration of a work. And those requirements say that you can register a musical composition two ways. You can register it with a PA copyright certificate registration or with a SR. If you use the SR, you are required to identify to the Copyright Office and to the public that that registration covers not only the physical embodiment of the music on a recording, but also the words and music, if it's both. If it's just words, then you put words. Otherwise, as Judge, the Court recognized earlier, is that the public would be unaware of who holds the rights. That's the whole purpose of a registration system. And with respect to the comment that my colleague mentioned in terms of, well, the work was available on the Internet, the law has settled that access, which was not reached by the Court below, but could have been reached and had it reached, could have found there was no access here. Simply posting something on the Internet is not sufficient for access, which is a requirement for copyright infringement. What do you do with the notional fact that your adversary points out that a common law copyright exists at the moment that a private composer or author sits in that person's study and produces the work? I'm sorry, I missed the question. Your adversary argues that the copyright attaches when you produce the work without registering it at all. Well, you can't come into court and sue for copyright infringement absent a registration. It is a claim processing rule. The Court, this Court, Article III Court, has original jurisdiction over copyright matters. And, of course, this Court can weigh in with respect to whether or not a litigant possesses a proper registration to seek a claim for copyright infringement and seek damages. The Court addressed that issue at the very instance of the opinion, saying that there was an insufficient registration. This is what the Court said. Why isn't this the type of factual error, as your friend characterizes it, that courts have excused? That this was a failure to check a box, but there's really no substance of dispute about who created the words and music. Well, this is not a mere error, Your Honor. This is the absolute failure to register a work. He gets no relief under either the Supreme Court case in Unicolors or under 411B, which he was referring to. 411B is an ability for a registry. He submitted the audio, right, and checked the sound recording on the form. And what he did not do is check the music and words and music boxes. I understand it. Again, we don't have this on a positive going on what you guys are telling me. If that's right, how is that not a technicality as opposed to a substantive failure? The case law is clear what type of inaccuracies, that's the way that they phrase it, an inaccuracy in the registration that would not preclude the Copyright Office from accepting the work for registration. So what the case law shows is an error that they deem as correctable would be a date, a place of birth, date of publication, things of that sort. But when you are claiming that the complete failure to register the work that you seek to protect and have standing to sue from has been omitted, that is a material error that neither 411A- If you file a copyright for a sound recording, you also file the recording itself. That's correct, Your Honor. When you file a compositional copyright, is it expected or required that you supply the lyrics and the musical notation?  Your Honor, for the deposit copy, you can use an actual copy of the recording, or you can submit liner notes, which would be the musical notation. I've actually listened, and I can't make out the words. So I'm not sure I know what notice anyone would have as to the lyrics just by listening to it. Because the delivery is very fast, it's very rhythmic, and it's very loud, actually. So what's the rule for whether you have to file the lyrics and the musical notation? The rule simply is that the Act provides that a registrant must file a deposit copy. And you may satisfy that rule different ways. One way is to actually deposit the recording. The other way is through the liner notes, which would show the musical notation, which show the lyrics where you could specifically see it. Otherwise, if it was just the recording, and in this particular example with this recording, you'd need to have a musicologist maybe do the notation for you so you could see what is there. But your point is that it is an undesirable way to register a musical. But it's not impermissible. It's not impermissible. But the requirement, Your Honor, is that in doing so, you must notate in your registration application specifically what you are seeking protection for. In this instance, all that the registrant did was say, sound recording. And I might add, Your Honor, that it was for multiple recordings. It wasn't a single recording for a single song. You can submit as a group recordings, which is what they did here. But putting that aside, Your Honor, not only do they not have the registration, they have been unable to plead access satisfactorily. As I said, the access that they claim is through the internet, which is a bare possibility of being able to hear it, which is insufficient as a matter of law. And third, on the substantial similarity test, Your Honor, the court found and said at the very end of its decision, more could be said on the ways these songs differ, but no more airtime is needed to resolve this case. It was clear cut, Your Honor. These songs did not sound alike and could not be found by a jury reasonably instructed. You said that this registration was for more than one song. Recording, Your Honor. More than one sound recording. Don't you have to have separate registrations for each sound recording? You can do a bunch, but then eventually, don't you eventually have to protect each one separate? The one registration can protect the individual recordings. So you can do it either way. And it's, I think, primarily a matter of cost for people, because for each registration you have a fee and a process you have to wait for. It's approved by the Copyright Office. And in the old days, you would have had to renew it, each individual registration. Thank you. Thank you, counsel. Thank you. Thank you, Your Honors. Quickly, I just want to touch on the materiality of the registration or the form over substance. We would just ask that the court vacate in light of Section 408C's no significance language and 411B's the registration requirement is satisfied. And if defendants want to challenge the registration or the materiality or significance of the box check on remand, they can. 411B sets out the procedures. So if there's a dispute between the parties about whether or not this box check is a material problem, then we can just ask the Copyright Office, and the Copyright Office can weigh in per the statutory scheme. Also regarding the fact that my friend says that the works aren't even close or aren't even similar, I mean, there's ample examples in the record of Internet users, people who listen to hip hop, hearing defendant's song and immediately saying that's the flow from plaintiff's song, immediately saying those are similar, I see similarities between these works. And that's what the ordinary observer test is concerned with. It's concerned with whether or not the public, the layperson, who might be more accustomed to listening to hip hop than you or I, or more familiar with these types of vocabularies that these artists are using, if they would recognize the similarities between the works. It's a very functional test at the end of the day, and we think on this record with these actual instances of members of the public saying I see these similarities, it would be wildly premature to dismiss this at 12B6. And just to clarify, it's the work as a whole, right? We listen to one song and then we listen to the other song. It's not like we listen to a three-second snippet and then another three-second snippet and say, oh, that part sounds the same. You do do the whole total concept and feel, but this Court has been clear that that also requires looking at clusters of similarity. As some of the cases that we cite in our brief, there's Perfect Hidden, which is one involving drugs, actually said that when doing this, you actually have to look at the clusters of similarities, too, and that's to comply with the mandates of the Supreme Court's Feist decision. If I could just make one point. Go ahead. My opponent said that novelty or newness is required, and that's just not true. Feist is very clear that originality is all that's required and not novelty, and this Court has repeatedly stressed you don't have to invent something brand new under the sun. You just have to make some very mild, creative decisions and not copy your stuff from someone else. So we would argue that all the expression going into making a song, that readily satisfies Feist's modicum of creativity. So thank you very much, Your Honors. Very quickly. Yes, very quickly. If we accept their paradigm for copyright protection. No more argument. You had to just argue he had a rebuttal, so if you want to correct something, that's one thing, but if you want to make an argument, no. Okay, thank you both. We'll take the case under advisement.